931 F.Supp. 1180 (1995)
The AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY, on behalf of its members, Robert Lander, Adam Jacobs, Joel Solow, and Ann Sorrel, Plaintiffs,
v.
Bret SCHUNDLER, in his official capacity as Mayor of the City of Jersey City, New Jersey, the City Council of Jersey City and the City of Jersey City, New Jersey, Defendants.
Civ. No. 95-206 (DRD).
United States District Court, D. New Jersey.
November 28, 1995.
*1181 Ronald K. Chen, Rutgers Constitutional Litigation Clinic, Newark, New Jersey, David Rocah, American Civil Liberties Union of N.J., Newark, New Jersey, for plaintiffs.
Kevin J. Hasson, Nancy E. Smith, The Becket Fund for Religious Liberty, Washington, D.C., Sean M. Connelly, Corporation Counsel, The City of Jersey City, Jersey City, New Jersey, for defendants.

OPINION
DEBEVOISE, Senior District Judge.
Plaintiffs, the American Civil Liberties Union of New Jersey ("ACLU"), and four residents of the City of Jersey City instituted this action against defendants, the City of Jersey City and its Mayor and Council, seeking, among other things, to preliminary and permanently enjoin Defendants from erecting a crèche and menorah at the front entrance of City Hall. Plaintiffs move for summary judgment on their complaint and for an Order that (1) permanently enjoins the Defendants from erecting or sponsoring religious displays on property owned by the City of Jersey City; and (2) declares that the display of a crèche and menorah in front of Jersey City Hall violates the First Amendment of the United States Constitution and correlative sections of the New Jersey Constitution. Defendants cross-move for summary judgment in their favor on all counts of the complaint. For the reasons set forth below, Plaintiffs' and Defendants' motions are granted in part and denied in part.

BACKGROUND
The following facts are undisputed and are taken from the parties' papers.
Since at least the 1965 holiday season, the City of Jersey City (the "City") has displayed a crèche and menorah on the lawn and plaza area in front of its City Hall. The City Hall Plaza is land that is owned by the City. In addition, the crèche and menorah are owned, maintained, and stored by the City. Since the beginning of his term as Mayor, the religious displays have been erected and displayed at the direction of Jersey City Mayor Bret Schundler and the City Council.
The crèche is displayed on the days immediately preceding and following Christmas. The scene depicts the traditional Christian imagery of the Three Wisemen, Joseph, Mary, and the Baby Jesus. The replicas of Mary and Joseph are placed inside of a small manger, while the Three Wisemen are placed a few feet away. It is erected on the right side of City Hall as one faces the main entrance. It is approximately twelve feet long by eight feet wide, surrounded and framed by a post-rail. Although usually displayed near a menorah,[1] no other traditional secular symbols of Christmas are displayed near the crèche.
The menorah is displayed during Hanukkah on the left side of City Hall Plaza. As with the display of the crèche, the display of the menorah does not include any secular symbols of the holiday season.
During the 1994 holiday season, all the individual plaintiffs encountered these displays. Three of the plaintiffs, Joel Solow, Ann Sorrel, and Robert Lander, as Jersey City residents, property owners, and taxpayers, viewed these displays as they travelled past City Hall or visited City Hall to conduct official or private business.
On or about December 13, 1994, the American Civil Liberties Union of New Jersey ("ACLU") sent a letter to Mayor Schundler informing him of complaints that it had received regarding the displays and asking the Mayor to reevaluate the "practice of displaying *1182 these religious symbols on public property." On or about December 16, 1994, The Becket Fund for Religious Liberty sent a response to the ACLU. That letter informed the ACLU that the City would post a sign describing the City's position regarding cultural displays as follows:
All cultural displays throughout the year, beginning with this crèche, will be accompanied by a sign that reads: "Through this display and others throughout the year, the City of Jersey City is pleased to celebrate the diverse cultural and ethnic heritages of its peoples."
A new sign containing the quoted language appeared in front of City Hall on December 16, 1994.
Plaintiffs brought this suit to, inter alia, enjoin the Defendants from erecting similar displays during the upcoming holiday season and all future holiday seasons.

SUMMARY JUDGMENT STANDARD
Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), rev'g, 723 F.2d 238 (3d Cir.1983). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Sound Ship Bldg. Co. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir.), cert. denied, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).
At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). The mere existence of some alleged factual dispute between the parties, however, will not otherwise defeat a properly supported motion for summary judgment. Id. at 247-248, 106 S.Ct. at 2510.

ANALYSIS
Plaintiffs argue that the crèche and menorah are religious symbols and that the City's practice of displaying these religious symbols violates the Establishment Clause of the United States Constitution, in addition to the Equal Protection Clause and various New Jersey Constitutional provisions.
Defendants assert that the City celebrates its diversity through a wide variety of official proclamations, city-sponsored events, and seasonal public displays. The City further states that because religion is often an integral part of culture, many of the City's various cultural activities include religious elements. It is in keeping with these cultural efforts that the City displays a menorah and crèche in front of City Hall each holiday season.

I. Plaintiffs' Establishment Clause Claim

In an effort to support the enthusiasm of the holiday season, a government entity must be careful not to step over the constitutional bounds of the Establishment Clause of the United States Constitution. The Establishment Clause of the First Amendment provides: "Congress shall make no law respecting the establishment of religion...." U.S. Const. amend. I. The First Amendment is applicable to the states through the Fourteenth Amendment. Everson v. Board of Ed., 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947).
The seminal case in determining whether a government practice violates the Establishment Clause is Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d *1183 745 (1971). In that decision, the Supreme Court described a three-part test to be used in determining whether a government practice violates the Establishment Clause. The practice (1) must have a secular purpose; (2) must neither advance nor inhibit religion in its principal or primary effect; and (3) must not foster an excessive entanglement with religion.[2]Id. at 612-13, 91 S.Ct. at 2111.
In the instant case, Defendants assert, and Plaintiffs do not dispute, that the displays have a secular purpose. Defendants state that in keeping with the City's efforts to celebrate its cultural diversity, the City displays the menorah and crèche in front of City Hall. Plaintiffs have not submitted any evidence to refute this stated purpose. Thus, the displays in question have a secular purpose.
The parties also do not discuss in their briefs whether the displays foster an excessive entanglement with religion. For a court to find excessive entanglement, the government practice does not have to cause it to monitor sectarian activities, which was at issue in Lemon. Obviously, that is not a concern here. However, another form of excessive entanglement is instigation of divisiveness among and between religious groups. Gilfillan v. City of Philadelphia, 637 F.2d 924, 931-32 (3d Cir.1980) (affirming district court's conclusion that city's payment for items in connection with Pope's visit violated the First Amendment), cert. denied, 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 845 (1981); see also May v. Cooperman, 572 F.Supp. 1561 (D.N.J.1983) (holding "moment of silence" legislation unconstitutional as violating the Establishment Clause), aff'd, 780 F.2d 240 (3d Cir.1985). However, as stated above, the parties have not addressed this issue in these motions, and the Court does not have sufficient information to determine whether the City's practice fosters an excessive entanglement of religion by monitoring sectarian activities or promoting political divisiveness.
The last inquiry under the Lemon test is whether the primary effect of government practice is to advance or inhibit religion. The Supreme Court stated in Allegheny County:
Our subsequent decisions further have refined the definition of governmental action that unconstitutionally advances religion. In recent years, we have paid particularly close attention to whether the challenged governmental practice either has the purpose or effect of "endorsing" religion, a concern that has long had a place in our Establishment Clause jurisprudence.
Allegheny County, 492 U.S. at 592, 109 S.Ct. at 3100.
Thus, in Allegheny County the Supreme Court held that the county's display of a crèche impermissibly endorsed religion and was therefore unconstitutional. In that case, the Allegheny County government erected a crèche on the Grand Staircase of the county courthouse. The display included the traditional figures, as the crèche in the instant case does, and at the crest of the display there was an angel bearing a banner that proclaimed "Gloria in Excelsis Deo". The crèche was surrounded by a wooden fence. In addition, the county decorated the crèche with red and white poinsettia plants and small evergreen trees with red bows. Id. at 580, 109 S.Ct. at 3094. Interpreting the Supreme Court's holding in Lynch v. Donnelly,[3] *1184 465 U.S. 668, 104 S.Ct. 1355, 79 L.Ed.2d 604 (1984), the Court stated that the effect of a crèche display turns on its setting. Applying that to the Allegheny County display, the Court noted:
Here, unlike in Lynch, nothing in the context of the display detracts from the crèche's religious message. The Lynch display composed a series of figures and objects, each group of which had its own focal point. Santa's house and his reindeer were objects of attention separate from the crèche, and had their specific visual story to tell. Similarly, whatever a "talking" wishing well may be, it obviously was a center of attention separate from the crèche. Here, in contrast, the crèche stands alone: it is the single element of the display on the Grand Staircase.
Allegheny County, 492 U.S. at 598, 109 S.Ct. at 3104. The Court further noted:
The presence of Santas or other Christmas decorations elsewhere in the county courthouse, and of the nearby gallery forum, fail to negate the endorsement effect of the crèche. The record demonstrates clearly that the crèche, with its floral frame, was its own display distinct from any other decorations or exhibitions in the building.
Id. at 598 n. 48, 109 S.Ct. at 3104 n. 48. Finally, the Court concluded:
[T]he crèche sits on the Grand Staircase, the "main" and "most beautiful part" of the building that is the seat of county government. No viewer could reasonably think that it occupies this location without the support and approval of the government. Thus, by permitting the "display of the crèche in this particular physical setting," the county sends an unmistakable message that it supports and promotes the Christian praise to God that is the crèche's religious message.
Id. at 599-600, 109 S.Ct. at 3104-05 (citations omitted).
The Allegheny Court also analyzed whether the City of Pittsburgh's display of a menorah violated the Establishment Clause.[4] Outside the city-county building, the City of Pittsburgh displayed a 45 foot Christmas tree, an 18 foot menorah, and a sign with the mayor's name entitled "Salute to Liberty." The sign read: "During this holiday season, the City of Pittsburgh salutes liberty. Let these festive lights remind us that we are the keepers of the flame of liberty and our legacy of freedom." Allegheny County, 492 U.S. at 581-82, 109 S.Ct. at 3094-95. The Court held that the menorah display did not have the effect of endorsing religion.[5]Id. at 620, 109 S.Ct. at 3115. It stated, "for the purposes of the Establishment Clause, the city's overall display must be understood as conveying the city's secular recognition of different traditions for celebrating the winter-holiday season. Id.
Applying these principles to the instant case, Jersey City's display of the crèche and menorah violate the Establishment Clause. As in Allegheny County, the crèche here stands alone without any secular symbols, as were present in Lynch, to detract from its obviously religious message.[6] Furthermore, it is displayed at the entrance to City Hall, where "no viewer could reasonably think that it occupies this location without the support and approval of the government." Allegheny County, 492 U.S. at 599-600, 109 S.Ct. at 3104. In fact, Defendants further reinforce that the crèche is supported by the government by the sign that accompanies it.
Defendants argue that the historical context of the crèche and menorah, along with the other cultural displays that the City sponsors during the year, indicates that these displays do not send the message that the City is endorsing religion. Rather, all the City's displays and events sponsored during *1185 the year indicate that the City is promoting the cultural diversity of its residents.
Although the goal of promoting the cultural diversity of its residents is an admirable one, this policy does not dilute the religious message that the crèche portrays. As the Allegheny Court stated, "Where the government's secular message can be conveyed by two symbols, only one of which carries religious meaning, an observer reasonably might infer from the fact that the government has chosen to use the religious symbol that the government means to promote religious faith." Id. at 618, 109 S.Ct. at 3114. The City could use one of many secular symbols that celebrate Christmas to promote the cultural diversity of its citizens.
Defendants also argue that given the physical setting of the crèche display, the crèche does not indicate that the government endorses religion. They assert that the setting of the crèche, accompanied by a menorah, a sign proclaiming the City's cultural diversity message, and a Christmas tree, does not indicate that the City is endorsing religion through its display. Defendants misinterpret the Supreme Court's decisions in Allegheny County and Lynch.
First, as discussed more fully below, the menorah in this display is not a secular symbol. Thus, the menorah does not dilute the religious message of the crèche.
Second, although both parties state that the City also erected a Christmas tree, Plaintiffs indicate that the Christmas tree is not near the crèche. This assertion is supported by the photographs that Plaintiffs submitted in their appendix. The Court was unable to locate the Christmas tree in any of these photographs. Thus, any dilution of the religious message of the crèche that the Christmas tree may have is negated by its distance from the crèche. See Allegheny County, 492 U.S. at 598 n. 48, 109 S.Ct. at 3104 n. 48 (stating that secular symbols elsewhere in the county courthouse did not negate the endorsement effect of the crèche because the crèche was its own display separate from any other exhibits in the courthouse).
Furthermore, a sign alone cannot negate an otherwise obvious religious message. See Stone v. Graham, 449 U.S. 39, 41, 101 S.Ct. 192, 194, 66 L.Ed.2d 199 (1980) (holding that the posting of the Ten Commandments in public schools violated the Establishment Clause notwithstanding an accompanying sign that attempted to state a secular purpose for the display). Therefore, although the sign included with this crèche indicates that the City is attempting to promote the cultural diversity of its citizens, the sign alone cannot overcome the overwhelming message of endorsement that the crèche sends. See Allegheny County, 492 U.S. at 600, 109 S.Ct. at 3104-05 (holding that sign disclosing that crèche was owned by a Roman Catholic organization and not the county only further demonstrated that the county was endorsing the religious message).
As to whether the display of the menorah violates the Establishment Clause, I find that it does. For the government's display of a menorah to be constitutionally permissible, the menorah must be accompanied by other items that dilute its religious message. In Allegheny County, the Supreme Court concluded that the menorah, although a religious symbol, did not indicate that Pittsburgh endorsed religion because of the physical setting of the menorah. In the display by the city-county building, the menorah was accompanied by a secular symbol, a Christmas tree, which was substantially larger than the menorah and the primary focus of the display. In addition, the display included the sign described above that stated that the display was a "Salute to Liberty."
In the instant matter, the menorah is not accompanied by a secular symbol that dilutes its religious message. Instead, the menorah is accompanied by the crèche, and rather than dilute the religious message of the menorah, the crèche emphasizes it. Together they indicate that the government endorses the Jewish and Christian holidays. It is exactly this type of message that is prohibited by the Establishment Clause.

II. Plaintiff's Equal Protection Claim

In the second count of their complaint, Plaintiffs allege a violation of their right to equal protection. However, in their briefs Plaintiffs do not include an argument to oppose *1186 Defendants' motion for summary judgment on this count.
In order to maintain an equal protection claim independent of their Establishment Clause claim, Plaintiffs must establish that they received different treatment from other similarly situated individuals or groups. Brown v. Borough of Mahaffey, 35 F.3d 846, 850 (3d Cir.1994). Plaintiffs have not presented any evidence that they were treated differently from other similarly situated groups. Therefore, Defendants' cross-motion for summary judgment on the second count of the complaint is granted.

III. New Jersey Constitutional Claims

Plaintiffs also allege three New Jersey Constitutional claims in their complaint. Specifically, Plaintiffs allege that Defendants' actions violated Article 1, Paragraphs 3, 4, and 5 of the New Jersey Constitution. The Article 1, Paragraph 4 claim has merit; the Article 1, Paragraphs 3 and 5 claims do not.
Article 1, Paragraph 4 provides, in pertinent part: "There shall be no establishment of one religious sect in preference to another. ..." N.J. Const. art. 1, ¶ 4. In interpreting the New Jersey Establishment Clause, New Jersey courts have relied on federal Establishment Clause jurisprudence. See, e.g., Ran-Dav's County Kosher, Inc. v. State, 129 N.J. 141, 608 A.2d 1353 (1992) (concluding that government practice violated federal and state Establishment Clauses using federal Establishment Clause principles), cert. denied, National Jewish Comm'n on Law & Public Affairs v. Ran-Dav's County Kosher, Inc., 507 U.S. 952, 113 S.Ct. 1366, 122 L.Ed.2d 744 (1993). Therefore, because Defendants' actions violate the federal Establishment Clause, they also violate the New Jersey Constitution.
Article 1, Paragraph 3 provides:
No person shall be deprived of the inestimable privilege of worshiping Almighty God in a manner agreeable to the dictates of his own conscience; nor under any pretense whatever be compelled to attend any place of worship contrary to his faith and judgment; nor shall any person be obliged to pay tithes, taxes, or other rates for building or repairing any church or churches, place or places of worship, or for the maintenance of any minister or ministry, contrary to what he believes to be right or has deliberately and voluntarily engaged to perform.
Plaintiffs argue that Defendants have violated this paragraph in two respects. One, Defendants have "creat[ed] on public property a shrine for the adoration of the faithful" in violation of a person's right not to be compelled to attend any place of worship. Two, because the City owns the crèche and menorah, "each and every citizen of Jersey City has therefore, to some degree, been `obliged to pay ... taxes for building or repairing [a] ... place or places of worship.'" (Pl.Br. at 26 (alterations in original).)
The New Jersey courts have not defined the phrase "place or places of worship." However, the plain meaning of this phrase does not contemplate the displays erected by the City. In addition, even if the display were considered a place of worship under the New Jersey Constitution, Defendants have not compelled Plaintiffs to attend "a place of worship." Although Plaintiffs may have to pass the display during the course of their travelling by City Hall, this does not rise to the level of compelled attendance. Therefore, Defendants' actions do not violate Article 1, paragraph 3 of the New Jersey Constitution.
Article 1, Paragraph 5 of the New Jersey Constitution provides:
No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin.
This paragraph is the New Jersey Constitution's equivalent to the Equal Protection Clause of the United States Constitution. See Washington Nat'l Ins. Co. v. Board of Review, 1 N.J. 545, 64 A.2d 443 (1949). Plaintiffs argue:
The plain meaning of article I, paragraph 5, of the New Jersey Constitution prevents *1187 the government from discriminating against its citizens on the basis of religion with respect to any enjoyment of civil rights. The clear endorsement of certain religions over all others and paying homage to those religions while ignoring others ostracizes those citizens that don't identify themselves with either religious group.
(Pl.Br. at 26.) This argument must also fail. As discussed above, Plaintiffs have not demonstrated that they were treated differently than other similarly situated groups. Thus, Defendants have not violated this paragraph of the New Jersey Constitution.

CONCLUSION
For the foregoing reasons, Plaintiffs' motion for summary judgment with respect to Count 1 and Count 3 of the complaint is granted, but denied with respect to the remaining counts. Defendants' cross-motion for summary judgment with respect to Counts 2, 4, and 5 of the complaint is granted, but denied with respect to the remaining counts.[7]
NOTES
[1] Because Hanukkah occurred early during the 1994 holiday season, the displays of the menorah and crèche did not overlap.
[2] Although in Lemon the Supreme Court stated that this test had been developed to determine whether a statute violated the Establishment Clause, courts, including the Supreme Court, have used it when analyzing government practices alleged to violate the Establishment Clause. See, e.g., County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter, 492 U.S. 573, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989).
[3] In Lynch, the Supreme Court examined a crèche display and reached the opposite conclusion from the one in Allegheny County. In Lynch, the City of Pawtucket, Rhode Island, erected a Christmas display in a park owned by a nonprofit organization. The display included a Santa Claus house, reindeer pulling Santa's sleigh, candy-striped poles, a Christmas tree, carolers, cutout figures representing such characters as a clown, an elephant, and a teddy bear, hundreds of colored lights, a large banner that read "Seasons Greetings," and a crèche. As in the instant case, all components of the Pawtucket display were owned by the city. Lynch, 465 U.S. at 671, 104 S.Ct. at 1358. The Court held that Pawtucket had a secular purpose in erecting the display, the display did not advance religion, and the display did not cause an excessive entanglement of government in religion. Id. at 685, 104 S.Ct. at 1365.
[4] The plaintiffs in Allegheny County did not protest the Christmas tree display that accompanied the menorah.
[5] The Supreme Court, however, did not express an opinion as to whether the menorah display violated the "purpose" or "entanglement" prong of the Lemon test. It stated that those issues were not before it.
[6] As discussed infra, the menorah in this context cannot be seen as a secular symbol.
[7] After argument of the cross-motions for summary judgment and prior to the issuance of this opinion, the Court referred the parties to mediation to be conducted by Eric R. Max, Esq., Director of the New Jersey Office of Dispute Settlement. The relevant United States Supreme Court decisions provide guidance as to the manner in which governmental units can erect holiday displays which include crèches and menorahs, and it was thought that perhaps with assistance the parties could reach agreement upon an appropriate display in Jersey City. Although mediation was not successful prior to the issuance of this decision, the parties might consider resuming discussions with the mediator.